Thank you, Your Honor. Now, Your Honor, may it please the court, my name is Christopher W. Katzenbach. I'm appearing on behalf of Melissa Antablin. Your Honor, in this case, the lower court has defined a plausible claim in such a way that makes it impossible to proceed without negating every conceivable alternative explanation. The notion of an alternative explanation is only relevant if that is an explanation that appears on the face of the complaint and is so persuasive that it would negate any circumstantial evidence of the plausibility of the allegations of retaliation involved in this case. Now, where do you allege? The district court says the plaintiff does not allege that any of her employers spoke to the defendant between the time she was hired and discharged. That's right, isn't it? No, Your Honor, we allege... Where in the complaint does it say that? On paragraph 61, we allege that the local 705 blackball interfered with and prevented Antablin from retaining... Well, I understand in general what you're alleging, but I'm trying to figure out where does it say that any of them spoke between the time she was hired and discharged. Let's go to the second question. Where do you allege that any of her employers knew anything about her protected union activity? Well, Your Honor, that on the second question... That's not in there either. Then the next one, where do you allege that the union learned of her employment or took any specific actions to encourage her employers to fire her? That's not there either. Yes, it is, Your Honor. What? 61 again? No, paragraph 52 and 56, but specifically that she lost work because of the actions of local 705 and that local 705 took actions causing Antablin to lose work. We specifically allege that they knew of her employment and that they learned of her employment either from the duty of employers to report it or from observations or from their admissions that they were aware of her employment. So that those are three elements that we allege that they would have known of her employment, and we allege that after they learned of her employment, she lost the jobs. Where do you allege that the employers fired her after they spoke to the union? We allege that after the union learned of her employment, that they lost her job, and that we allege that they did so and she lost the work because local 705 took actions to cause that, and that because of the actions, and that local 705 blackballed, interfered with, and prevented Antablin from retaining or obtaining work. Where do you allege any facts indicating that the defendant had any influence over employers at all? Well, Your Honor, we allege specifically that they took actions to do that. Now, how they would have influenced an employer is a matter that is within their own knowledge. But it seems to me very clear that alleging the specifics of how the actions occurred is a matter of detail that is more appropriately addressed in discovery, particularly where these are matters within the knowledge of the defendant himself. To say that we have to prove what was said in a conversation to which we were not parties, it seems to me to be asking us to make allegations that really can't be made. What we can do is point to a long pattern of hostility towards Ms. Antablin, and we can point to a pattern and practice of where the union learns of her employment, she loses the jobs that she was promised. We can point to a repetitive pattern of that, we can point to hostility that occurred, and we can point to the fact that repeatedly, in one instance she's given a completely false explanation for the action, and in the other instances that she's given either bizarre or no explanations at all for the employer's actions. My worry, counsel, is this. When I read your complaint and I put all your allegations here together, I can find that the union may have learned she was working, I can find the union may have taken nonspecific actions through unspecific agents causing her to lose her daily hire, I can find the union may have blackballed her, though there's no dates, no people, no actions to prevent her from finding the work. In my book, that's not enough. How do you respond? Well, Your Honor, I think that – yes, Your Honor, let me respond specifically. In terms of dates and times, we specifically allege every one of these employments. In terms of the – we're specific about the employments and her loss of work. We're specific about what she was told and how that changed. We're specific about the fact that this occurred after the union would have learned of her employment. So it strikes me, Your Honor, with respect to your concerns, that that creates a very standard circumstantial case that this entablant was lost her work because of the union's actions. This is a case – the question for the court is under the standard, is this enough, for example, to proceed with discovery on this issue? And it seems to me it manifestly is. This is not like one case or one situation. This is a situation where we have multiple actions by the – multiple actions, we have multiple events, we have a consistent pattern, and we have long – we have consistent actions of hostility towards her. Now, it seems to me at that point that unless the court is going to say that you have to plead the case – you have to allege every fact that you will prove – that you will prove at trial without discovery, then it seems to me the court's requiring a detail of – in this case, that neither Twomey or Akebel or any of these other – any case in this court has required. It seems to me at this point we have alleged a type of circumstantial evidence that isn't limited to just one or two instances, but repeated instances of the same pattern where no decent explanation is given for the employer's actions, and the actions are themselves bizarre, that she would be promised work, and then a day or two later she would maybe work a day, and then all of a sudden the promised work would disappear after the union has learned of her employment. Those are the allegations that are material – those patterns of practice, those state the kind of evidence that I think – I submit to the court ought to be allowed as a plausible claim, because otherwise the court is going to be in a situation where – where no matter what the power of the circumstantial evidence, a circumstantial case can't be proven. How can we prove in a complaint what exactly a union said when we're party to a conversation? All we can say is that under these facts, the circumstances are such that they create an inference, a plausible inference, that the union has interfered with her employment, and that is enough to proceed under every standard. It seems to me that is enough to proceed in the specific facts that we need to have. So, if you were allowed to amend this complaint, is there anything that you could add that would address the concerns that have been raised? Well, Your Honor, we could make allegations concerning manners in which this would have influenced the employers. For example, we would – No, can you – no, Judge Smith has specific questions about whether or not you can allege that the costumers knew about the employment, if there was communication between costumers and the prospective employers. Do you have – if you were able to amend your complaint, could you make specific allegations of that nature? Well, we could make specific allegations that the union would have learned of her employment in three ways. The one – No, specifically how they learned, when they learned, and what communications were made to prevent her from either getting employment or continuing to be employed. Would you be able to make any specific allegations along those lines? We have – in some sense, yes. We can – we have alleged that they have a duty to – that they have – employers have a duty to advise the union of their employment. So, in other words, your – if you were allowed an opportunity to amend, your complaint would read much like it does now? It would be similar, but we – it would be similar to what we have, because we do have those allegations. We can't say, for example, what a – what they said to a particular employer, because we weren't part of that conversation. We could allege the general reasons why an employer would listen to the union. We could allege, for example, why an employer might choose to not hire or not continue Ms. Ann Pavlin's employment. We could allege why the union would have influence over this, why the union would be influential on this. But like any sort of interference case, there – you know, the proof is in the pudding, namely that she had the jobs, she was promised the work, the union knew about it, learned about it, and the jobs were gone. How do you allege the union learned about it? We allege – How did the union learn about it? There are three ways, Your Honor. First – But specifically in this case, how did the union learn about the employment, specifically in this case? In this case, each time she is hired, which – and each time she is hired, the union – the employer has a duty to report that hiring to the union. And did the – do you allege that the employer in each of these cases did, in fact, report to the union? No, we certainly could allege that they would have learned it through that duty. We can certainly allege that in each case they did. I was going to say, that's the missing link. Even though they had a duty to notify, your complaint doesn't say that they, in fact, notified the union so that the union was aware of each one of these positions. Well, I think that it's a reasonable inference that where a contract requires something, that the contract is complied with in the absence of some evidence to the contrary. But we can certainly allege that in each case the employer complied with their obligations, and after the union learned about it, then she lost work. The second way is through observations. We allege that she would have been observed working by either members of the union or supporters of the incumbents. And the third explanation, the evidence we have, is the union's own statement to her that they were aware of her employment. Now, certainly a statement that they were aware of her employment is an admission by the union that they were aware of her employment. Where is that in your complaint, that the union said they were aware of her employment? Well, it is in paragraph 53, subparagraph C towards the end. It alleges in early November of 2017, Local 705 informed Ann Tablin that she could not have an extension of pay, reduced use, because Local 705 had been receiving reports that Ann Tablin had been working. Does it mention these particular jobs? No, Your Honor. The obligation to make those reports is concomitant to all of those jobs. You were signing paragraph 53, correct? Yes, I'm signing to paragraph 53. C. C, but A and B are as well there. Well, that's paragraph 51. Paragraph 51? 53. Paragraph 53. I don't see an A, B, and C on my document. What page of the record are you on? Paragraph 25. Page 25 of the excerpt of record. Page 25. It's page... What page of the complaint? Page 14 of the complaint. Page 14. Oh, 54. 53. 53 doesn't have... 53 has A, B, C, Judge. You have to read 83 and 53, but I didn't find anything in there that says what you asked him, but I'm glad you did. Well, it says... it's not paragraph... A says... refers to the employment through the... learned of their employment through the obligation of the employer to... But here's the minute. Would have learned through the obligation to report. Everything is about... they would have learned because they had obligation to report. They would have observed working at such employments by their agents or persons associated with them and appeared to be hostile to the plaintiff. That's your best allegation. Well, Your Honor, but... Which we presume to be true for these people. I'm not taking that side. I'm just trying to make you get to the point here. I understand. That, I think, is sufficient allegation to show that they would... that they knew given the circumstantial evidence and given the allegations that they took discriminatory actions. Counsel, if you had alleged that there was somebody working with her who informed her that they had advised the union that they saw her on the job, that would be a concrete allegation other than saying they would have seen her and would have reported that. Well, you know... I think there's a little bit of a difference between what you've alleged and what normally suffices. I don't think there's a difference, Your Honor. I think that what you're asking for me to do is do what the judge didn't allow, which is if they want us to allege more details, how the union would have known, we could certainly cite the collective bargaining provision. That's what Rule 8 requires. Rule 8 requires specific facts. The who, what, when, where... No, I don't think Rule 8 requires more than we've alleged here. All right. But, Your Honor, I apologize. I don't mean to interrupt. I think the important question was Judge Rawlinson's question. If we were to say, okay, Judge, you shouldn't have dismissed this, you should have given this guy a chance to amend again, because we don't think there's enough of the who, what, why, where that ought to be here, which is exactly what the district court said, what would you allege? That was her question, and that's why I was interested in your response. Very well, Your Honor. First of all, just to correct Your Honor, we have never had an opportunity to amend. It's not amend again. There was never an opportunity to amend even once. I stand corrected. You are right. We would have alleged, we would have alleged specifically, for example, on the wrinkle in time, that they would have received the information on her employment on Thursday, and that she was told that she could, and after she was promised to work on the Monday, and that after they received the information on Thursday, she lost the job on, she was, that lost the job. But you said they would have received the information. Yeah. Why don't you say they did receive the information? We would allege on information and belief that they did receive it. So that's what the allegation would be. We would allege that on information and belief that they received information of her employment on each one of these employments prior to the time that they let her go. But we can only make such an allegation on information and belief because obviously we're not privy to that communication. They don't send a copy of that. They don't send a copy of the communication to the union. We have only the communications that were sent to us. Counsel, you've exceeded your time. We'll give you a minute or two for rebuttal. Very well, Your Honor. Good morning, Your Honors. Lisa Domenovich of Bush Gottlieb on behalf of Motion Picture Costumers Local 705. May it please the Court. This appeal raises the issue of can a complaint attacking independent employer hiring decisions be brought against a third party when no facts are pleaded to connect the third party to the employer decision maker when but-for causation as opposed to mixed motive is required? On appeal, it's already been noted that there is multiple deficiencies noted by the district court to a plausible claim. And all we've heard about the amendments is some aspect of what notice would the union may have received. Now, sending reports of hundreds of productions to a union doesn't mean that the union received it and doesn't mean that any calls or any kind of outreach occurred by the union. And we've also heard that they would amend... But just a minute, but just a minute. When I get this complaint in, and I'm the DJ, and I have to give it the benefit of the doubt and give it honest that it is true, and you are in total control of everything that would say what would be in these circumstances such that they would give you discovery to know whether you really got those or whether you didn't. Otherwise, they have no way to do it. How better can they put it? Well, we have other precedents. I mean, the other precedents for a but-for causation generally involve a hiring... A but-for causation in this situation, we're left to say in this particular case that every one of those who made, if you will, an explanation of why she did not keep her employment, that they were false, that they were just covering for the union. And this is the only way that you can get to this is by saying, you would have learned of this, you would know what they are, and these people would have been anxious not to make the union mad, and therefore, this is what happened. And that's what they've alleged. Yes, but it's highly speculative that... Only because they can only allege it, and we have to give them deference in what they allege. And if they could do some discovery, they would be able to go to the employers, they would be able to go to you and find that information that you say they don't have. Your Honor, it's highly speculative that an employer just simply wants to do what a union asks. Not in the real world. An employer has a reason to want to keep some degree of amity between him and the union. After all, they have to bargain collectively, and they care about what the union wants. I mean, we don't have to... I mean, this deals with a complaint, and I don't understand why we have to be oblivious to the fact that a union and an employer might want to do a favor to the union. Now, if there had been an answer, and if there had been discovery, the employer could have said, no, they never approached me, and then you would have an argument. But I don't think it's that far-fetched that it should be required dismissal. Particularly, by the way, given what he does want to allege, and sets out in his great brief at 19 to 20, of what he would put in an amended complaint. Your Honor, respectfully, having practiced in the union world for 14 years, everything that these unions I work have obtained is through hard work and discipline and strategy and collective action. And when you're at the bargaining table, you're on the opposite side. And in order to get anything, often you have to rely on strikes, and you risk an employer lockout. Yeah, but an employer has a reason not to want strikes and not to want lockouts. And if the union wants them to get rid of some employee because they have, for whatever reason, animosity against the employee, it doesn't strike me as incredible as a matter of law that they could have done it for that reason. No, it's not incredible, but is it plausible? And where is the union's knowledge about these employments? Let's look at paragraph 51, H&I. I mean, there it's simply a conversation between the employer and the plaintiff where she's told she can submit a resume and it doesn't go anywhere. How would the union possibly have known about that? There's no reporting obligation associated with a conversation about sending in your resume, but somehow the union is... But she's also been hired and fired several times. Right, and it's a daily hire employment in a competitive freelance industry. It's not a public sector job where you have a property interest in continuing employment with a just cause provision to support it. This is a very different industry. It's daily hire. And the only allegation that an employer made a false claim is in the first one at 51A. And there, the basis of the false statement is that she was told that the number of customers had been reduced and that they hadn't been reduced. But she acknowledges that she's no longer there, so she's the reduction. That's not even a false statement on the face of the complaint. And so the idea that that's a false statement and that opened up a small local union to discovery because nine months earlier there was an incident at the union hall, I mean, that opens it up quite dramatically to a federal case that there's not precedent to support. Additionally, if the union were so powerful and so great at currying favor to false dissidents, then all the other people in the complaint that she alleges were supporters would have had similar employment issues. There's nothing to allege that they've experienced employment issues. It's just internal union matters that have happened to them. So, I mean, there's on the face of it, it's in black's plausibility that the union would have known about these employments through just a reporting obligation, many of which never even happened. There wouldn't be, say, a reporting obligation. You say that, but we have to assume that it's true. Yes. You didn't file a motion for summary judgment with affidavits. No, that's correct. And she also, well, go ahead. I want to ask about the judge's decision to deny leave to repleave. Go ahead. Okay. Well, what I was saying, though, is that, you know, one of them is that she was told she would be working, but then just the dates were changed to be determined she wasn't hired. Again, there's no connection that the union would have known about that and could have done anything. On the basis of not allowing leave to amend, it is fair that it would have been futile. I mean, we haven't heard sufficient ways in which it would be changed. And there was opportunities before this. For instance, in the record, it's supplemental excerpts of record, page 17. You can see the union, or excuse me, myself as counsel to defendant, reached out and tried to meet and confer consistent with central district's local rule 7-3 and repeatedly tried to schedule meet and confer, was not able to do so, and so therefore put in writing the rationale for our motion, including the fact that there wasn't a possibility pled under Iqbal and Twombly of any kind of causation between the independent employer's decisions and the union. And there was no choice. They elected not to amend the complaint pursuant to that notice. There also wasn't – I'm not sure what notice you're talking about. It seemed to me that the district judge unilaterally in his decision just said, I'm not going to allow amendment because they couldn't allege facts to fill the gap that he found. And they have proposed allegations in their reply brief that they could allege facts which would have met the judge's objection. Well, I don't see that as meeting the judge's objection because the judge cites four deficiencies. Well, I did say, unless I'm reading it wrong, that Local 5 spoke to employers and encouraged them to deny employment, that the employers honored Local 705's requests for reasons such as to avoid conflict with Local 5's leadership over Anteblen, or to curry favor with Local 705's leaders and to secure their will, their goodwill, and that you would also be able to add qualifications, allegations regarding the qualifications for positions and the quality of her performance. You understand those are the added allegations Plaintiff now says they'll make. Do you understand that, Counselor? Yes, I understand. I've read the brief and I understand that that's what they would do. And I believe that based on the rationale of Judge Klausner's decision that we would just be here again in two years because that's not sufficient. That doesn't overcome the deficiency that if the employers were indeed lying about the costume job availability, that it was more plausible that they chose to discharge her for other reasons after supervising a day or two of her work. It doesn't overcome the deficiency noted by the District Court decision that the defendant didn't cause any of the loss of employment, that Plaintiff does not allege that any of her employers spoke with defendant. I mean, still, we don't have any... She does propose to allege that in the amended complaint. Well, that they talked generally, but there's not a specific person on each side of the conversation.  Where in that case, there was a telephone conversation and each party, the witness and the detective were identified in the complaint. And even in that case, there was a dissent by Judge Fernandez saying that the court doesn't have to proceed... Spared out all the information for the party. That's the bottom line. Well, so you're saying, don't send it back with the about demand. You better concentrate on the complaint as it is. And if the complaint as it is is enough, then you better just reverse there if that's where you're going. Is that what you're telling me? No, Your Honor. I mean, I still don't see how what there is is but for... Well, I understand. I understand. But if I believe that they, given every benefit of the doubt to the Plaintiff, that I can't... I don't think there's enough there to hold it, but I think they might with sufficient allegations hold it. And he didn't give him any chance to do that. Then we could send it back for amendment. If you're saying to me the judge isn't going to do that, Judge, he's not going to do it anyway, then at that point I just as well say, well, then we'll reverse and let's go for summary judgment. Let's let this union give us a little answer once and maybe a little discovery. Sure. I didn't mean to say that I know how a judge would rule in the future or that I can get into the minds of anyone. All I meant to say is that I can understand that it's not an abusive discretion for him to say that it was futile to amend because there still isn't the... we still haven't heard allegations that would overcome to make it plausible when there's just simply nothing there to link. If you look, for instance, at the Second Circuit decision that's not cited in any of the briefs, Madelon v. Local 17 at 152 F. 3rd 178, it's from 1998. There the union says to the members, anyone who participates in this demonstration that is speaking out against leadership, you'll lose your job. And then the next day, one of the people on the other slate that was a demonstrator shows up and he's told he's off work. And it's also in the construction industry, Carpenter, where there's hiring calls, and so unions are more involved in the hiring process there. The union is saying they're going to do this. There's nothing like that here. The union has never claimed to say that they're going to interfere with employment. There's no allegation that there is a connection and that the idea that just because at some point, at the end of all of this in November of 17, someone knew that she had been working generally, doesn't support this idea that there's this level of knowledge of a daily hire relationship and that the union is so on top of it to go in. And so it's fair to say that based on the rationale of his ruling, that it wasn't an abuse of discretion to find it futile when you still don't have any kind of specific allegations that this union is in a relationship with the industry that would have been such that they would have agreed to favor to get the employers to conspire with them to fire someone for a basis that could have opened them up to 301 liability, a joint liability with the union in a GFR action. I mean, it's just pure speculation. It's fantasy. And the district court's decision, certainly there's reasons that it is futile to have amendment. And we ask for you to affirm. You're on. Any other questions? No. Thank you, counsel. Counsel, we'll give you a minute for rebuttal. Just one quick point. This nature, she's referred to this as daily employment, but it's not really daily employment. It is really ongoing by day by day. And for example, she referred to the time the allegation about the customers not being reduced and the claim that they were reduced being false. The reason we make that allegation is we get call sheets. And the call sheets list all the number of customers that are being called for work on a particular day. And in fact, we have the call sheets for the day they said the customers were reduced. And in fact, that shows that the number of customers was the same. Actually, it was actually an additional one. So that sort of evidentiary stuff is stuff that we would have. Some of it we have. Some of it we will obtain in discovery. But the bottom line is that we think that the allegations or the allegations that we could have are sufficient here. So with that, Your Honor, if you have no further questions. It appears not. Thank you, counsel. Thank you to both counsel. The case is argued is submitted for decision by the court. The next case on calendar for argument is Piott versus the Money Store.
judges: Rawlinson, N.R. Smith, Korman